573-0009637



RECEIVED
SEP 1 9 2007
H.O. Claims / Legal

## STATE OF TENNESSEE
### DEPARTMENT OF COMMERCE AND INSURANCE
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131



RECEIVED  SEP 19  H.O. Claims / Legal

September 14, 2007

Assurance Company Of America
1400 Am Ln, T1-14, % A. Hanrahan
Schaumburg, IL 60196-1056
NAIC # 19305

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2150 0004 6621 7722
Cashier # 5173

Re: Kenneth A. Bowman & Commercial Bank  V.  Assurance Company Of America

Docket # 3-384-07

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Complaint was served on me on August 29, 2007 by Kenneth A. Bowman & Commercial Bank pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Circuit Court of Knox County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Knox County
    400 Main Avenue, Rm M-30 C/C Bldg
    Knoxville, Tn 37902



EXHIBIT

A

Service of Process 615 532 2606

The Americans with Disabilities Act prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the Americans with Disabilities Act, if necessary, the Tennessee Judicial Branch will provide reasonable modifications in order to access all of its programs, services and activities to qualified individuals with disabilities.

If you require a modification to access the judicial program and/or have special needs because of a qualified disability, you must submit a written Request for Modification to the Local Judicial Program ADA Coordinator listed below at least five (5) business days prior to the date of the judicial program, if possible. A form is available from the Local Judicial Program ADA Coordinator or from the Tennessee Judicial Program ADA Coordinator. http://www.tsc.state.tn.us

If you need assistance, have questions or need additional information, please contact the Local Judicial Program ADA Coordinator:

> Pat Carson, Compliance Officer
> Knox County Human Resources Office
> Suite 360 City-County Building
> 400 Main Street, Knoxville, Tennessee 37902
> Voice phone: 215-2952        TTY: 215-2497

If you need assistance, have questions, or need additional information, you may also contact the Tennessee Judicial Program ADA Coordinator:

> Pamela Taylor, Manager/Coordinator
> State Judicial ADA Program
> Administrative Office of the Courts
> Nashville City Center, Suite 600, 511 Union Street
> Nashville, TN 37219
> 615-741-2687 .        Fax: 615-741-6285

The Tennessee Judicial Branch Americans with Disabilities Act Policy Regarding Access to Judicial Programs, as well as a Request for Modification form may be found online at www.tsc.state.tn.us.

## IN THE CIRCUIT COURT OF KNOX COUNTY, TENNESSEE

FILED

KENNETH A. BOWMAN and )
COMMERCIAL BANK, )

2007 SEP 12 PH 3:28

CATHERINE F. QUIST
CIRCUIT COURT CLERK

    Plaintiffs )

vs. )

                              Case No. 3-38407

ASSURANCE COMPANY )
OF AMERICA, )
                    )

    Defendant. )

## SUMMONS (AMENDED COMPLAINT)

To the above-named Defendant, Assurance Company of America, c/o Tennessee Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, Tennessee 37243-0565

    You are hereby summoned and required to serve upon Gregory C. Logue, plaintiff's attorney, whose address is 900 Gay Street, S.W., Suite 900, P.O. Box 900, Knoxville, Tennessee 37901-0900, an answer to the Complaint herewith served upon you within thirty (30) days after service of this Summons and Complaint upon you, judgment by default can be taken against you for relief demanded in the Complaint.

    Issued and attested this _12_ day of _Sept_, 2007.

_____
Clerk

_____
Deputy Clerk

563869.1

**To the Defendant:**

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be in effect as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

**To the process server: Assurance Company of America, c/o Tennessee Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, Tennessee 37243-0565**

## RETURN

I received this summons on the _____ day of _____, 2007.

I hereby certify and return that on the _____ day of _____, 2007. I:

( ) served this summons and a complaint on defendant, in the following manner:

_____

_____

_____

( ) failed to serve this summons within 30 days after its issuance because: _____

_____

_____

_____

_____
Process Server

563869.1

# IN THE CIRCUIT COURT OF KNOX COUNTY, TENNESSEE

KENNETH A. BOWMAN and )
COMMERCIAL BANK, )
)
     **Plaintiffs** )
)
vs. )     **Case No. 3-38407**
)
ASSURANCE COMPANY )
OF AMERICA, )
)
     **Defendant.** )

## AMENDED COMPLAINT

Comes Kenneth A. Bowman ("Mr. Bowman") and Commercial Bank, both by and through counsel, pursuant to Tennessee Rules of Civil Procedure 15 and 20, and hereby file this Amended Complaint against the Defendant, Assurance Company of America ("ACA"), and would show as follows unto this Honorable Court:

## I.    PARTIES AND JURISDICTION

1.    Kenneth A. Bowman is a citizen and resident of Tennessee who resides at 102 Huntington Lane, Heiskell, Tennessee 37754.

2.    Commercial Bank is a Tennessee banking corporation with its principal place of business located at 8710 Cumberland Gap Parkway, Harrogate, Tennessee 37752.

3.    Upon information and belief, ACA is a foreign corporation which can be served via delivering a summons and copy of this Complaint to the Tennessee Commissioner of Insurance's Office pursuant to Tenn. Code Ann. § 56-2-103.

4.    Venue is proper in this Court and the parties are otherwise subject to this Court's jurisdiction.

## II.    FACTUAL BACKGROUND

5.    Mr. Bowman and Commercial Bank incorporate the allegations set forth in Paragraphs 1-4 as if set forth fully herein.

6.    On or about May 31, 2005, Mr. Bowman executed a Promissory Note in favor of Commercial Bank with a maximum principal amount of $164,000.00. Said Promissory Note was set up as a "construction loan" whereby multiple advances would be distributed to Mr. Bowman up to a maximum indebtedness of $164,000.00. This loan was for the construction of a home located on Lot 72 of the Vista Hills Subdivision in Powell, Tennessee 37849 (the "Property"). A true and exact copy of said Promissory Note is attached hereto as Exhibit A.

7.    Contemporaneously with the execution of the above-referenced Promissory Note, Mr. Bowman executed a Deed of Trust in favor of Commercial Bank to secure the outstanding indebtedness that Mr. Bowman incurred for the construction of the home located on the Property. A true and exact copy of said Deed of Trust is attached hereto as Exhibit B.

8.    During the construction of the home, Mr. Bowman requested numerous advances to pay for materials and construction-related labor. During the construction process, Commercial Bank conducted numerous appraisals of the progress of the construction and approved Mr. Bowman's requests for advances. On or about May 5, 2006, after construction on the home was approximately 80% to 90% complete, the substantially completed structure was destroyed by fire.

9.    At all relevant times, the Property was insured by an insurance policy issued by ACA (Policy No. BR 61716827). A true and exact copy of the declarations page and the policy itself are attached hereto as Exhibit C.

563870.1

10.     On or about September 1, 2006, Mr. Bowman filed a Sworn Statement in Proof of Loss indicating that the Property was destroyed by fire on or about May 5, 2006. In the Sworn Statement in Proof of Loss, Mr. Bowman advised that the structure was under construction and had an actual cash value of $164,000.00. A true and exact copy of said Sworn Statement in Proof of Loss is attached hereto as Exhibit D.

11.     Pursuant to a Certificate of Insurance issued by ACA on or about June 2, 2005, Commercial Bank was listed as loss payee or additional insured pursuant to Policy No. BR 61716827. A true and correct copy of said Certificate of Insurance is attached hereto as Exhibit E. Pursuant to Section 5 of the policy at issue, a mortgage holder is entitled to receive payment for a covered loss even if recovery is denied to the policyholder.

12.     Both Commercial Bank and Mr. Bowman, by and through their respective attorneys, have been engaged in negotiations with ACA regarding this loss since shortly after the date of the fire. Prior to April 26, 2007, counsel for Commercial Bank had, on at least five (5) occasions, written letters to ACA's counsel inquiring about the status of this matter. Counsel for Commercial Bank wrote to the attorney representing ACA on January 8, 2007, January 26, 2007, February 23, 2007, March 1, 2007 and March 16, 2007. True and exact copies of the letters written by Commercial Bank's counsel are attached hereto as collective Exhibit F. All of said letters remained unanswered until April 26, 2007.

13.     The above-referenced letters contained information regarding Commercial Bank's claim and an affidavit of Commercial Bank's Senior Vice President, Alan Gilbert. These letters also indicated that Commercial Bank possessed various information pertaining to the approximate percentage completion of the home at various dates and the estimated value of the

3

Property at different stages of construction. Commercial Bank offered to provide ACA with any and all information it possessed in order to expedite the processing of this claim.

14. On or about April 26, 2007, counsel for Commercial Bank received a copy of a letter from ACA's attorney to Mr. Bowman's counsel. Said letter had enclosed therewith a check in the amount of $115,640.94. The letter asserts that the payment of those funds constitutes full compensation for the loss sustained because "we believe this is the total amount of the loss which has been properly documented under the Inland Marine policy." A true and exact copy of said April 26, 2007 letter is attached hereto as Exhibit G.

15. After ACA's assurances that the negotiation of this check was not going to be viewed as an accord and satisfaction of the dispute, Mr. Bowman and Commercial Bank endorsed the check and applied the proceeds to the loan. Unfortunately, the payment of $115,640.94 in no way fully compensates Mr. Bowman and/or Commercial Bank for the loss sustained. Commercial Bank had the Property appraised on November 22, 2005 and the appraisal showed a total value of $194,088. A true and exact copy of the November 22, 2005 appraisal is attached hereto as Exhibit H.

16. Upon information and belief, additional improvements were made after November 22, 2005 which substantially increased the value of the Property. As a result, the total value of the lot and structure likely far exceeded $200,000 at the time of the fire. Counsel for ACA has reviewed Commercial Bank's entire loan file which included the November 22, 2005 appraisal.

17. Section 6 of the policy, entitled "Valuation," states:

In the event of *loss*, the value of the property will be determined as of the time of the loss.

a. The value of the property will not be more than the amount necessary to replace the structure or repair the structure, whichever is less, to the same point of completion that had been achieved immediately before the *loss*.

18. The lot itself has a fair market value of $33,000 which, based on the above-referenced November 22, 2005 appraisal, would indicate that the value of the structure itself was valued at not less than $161,088 at that time. As stated above, additional work was done after that point which served to even further increase the value of the structure. Therefore, ACA's payment of $115,640.94 in purported full payment of the parties' claims is clearly insufficient to compensate for the loss sustained. This payment appears to have been offered in bad faith as there are no facts supporting the payment of the substantially reduced amount.

19. Mr. Bowman borrowed the entire $164,000 that was permitted under the terms of the Commercial Bank Promissory Note and he avers that he used all of said funds to construct the home that was destroyed. As a result, Mr. Bowman expended $164,000 on the construction of the home and filed a sworn proof of loss in that amount. Based on today's market prices, the amount necessary to replace the structure that was destroyed will certainly exceed that amount. The intent of the policy was to compensate for the replacement value of the destroyed structure. *See* Section 6 of the Policy. The cost to replace the structure today will far exceed the $164,000 it took to originally construct the substantially completed home in 2005-2006 and ACA has the duty to compensate for the cost of replacement. Mr. Bowman provided a detailed estimate to ACA that said cost would be at least $194,000 as of November 2006. Said costs would exceed this amount as of the date of the filing of this action.

20. Furthermore, Commercial Bank's counsel's letter of February 23, 2007 made demand for payment of Commercial Bank's claim pursuant to Tenn. Code Ann. § 56-7-105. Despite making such a demand, ACA has failed to fully pay this claim in full within sixty (60)

days of the date of the demand, therefore rendering ACA liable for the twenty-five percent (25%) bad faith penalty imposed pursuant to Tennessee law.

21.    Commercial Bank and Bowman are they are entitled to at least an additional $85,000.00 in compensation pursuant to the contract of insurance plus attorney's fees, costs, and the bad faith penalty.

22.    Additionally, Mr. Bowman would show that he has been advised that the Rural Metro Fire Department still holds an unpaid charge for $6,400 associated with extinguishing the fire at said residence. Mr. Bowman avers that he is also entitled to recover this amount per the policy.

## II.    PRAYER FOR RELIEF

1.    That proper process issue and be served upon the Defendant, Assurance Company of America, and that same be required to appear and answer this Complaint fully and truthfully.

2.    That the Plaintiffs, Kenneth A. Bowman and Commercial Bank, be awarded a total judgment against the Defendant, Assurance Company of America, in an amount not less than $85,000.00 to include, but not be limited to, pre-judgment interest, costs, reasonable attorney's fees plus the twenty-five percent (25%) bad faith penalty and that said award be apportioned between the parties as their interests appear.

3.    That a jury be empaneled to try this case.

4.    For such other and further relief as the Court deems just and proper.

6

Respectfully submitted this _12th_ day of _September_, 2007.

WOOLF, McCLANE, BRIGHT,
ALLEN & CARPENTER, PLLC

By: _____
    Gregory C. Logue, BPR#012157
    J. Calvin Ward, BPR#024778

900 Riverview Tower
Post Office Box 900
Knoxville, Tennessee 37901-0900
(865) 215-1000

Attorneys for Commercial Bank

JOYCE, MEREDITH, FLITCROFT &
NORMAND

By: _____
    James T. Normand, BPR#012739 w/ permission

Town Hall Building
30 Kentucky Avenue
P.O. Box 6197
Oak Ridge, Tennessee 37831
(865) 482-2486

Attorneys for Kenneth A. Bowman

7

## COST BOND

We acknowledge ourselves as surety for all costs and taxes in this case in accordance with Tenn. Code Ann. § 20-12-120.

SURETY:

WOOLF, McCLANE, BRIGHT,
   ALLEN & CARPENTER, PLLC

By: _____
   Gregory C. Logue, BPR#012157

Post Office Box 900
Knoxville, Tennessee 37901-0900
(865) 215-1000

8

| ANDY BOWMAN<br>122 WEBSTER RD<br>LAKE CITY, TN 37769 | COMMERCIAL BANK, INC.<br>6710 CUMBERLAND GAP PARKWAY<br>P O BOX 400<br>HARROGATE, TN 37752 | Loan Number 28678922<br>Date 05-31-2005<br>Maturity Date 05-31-2008<br>Loan Amount $ 184,000.00<br>Renewal Of _____ |
|---|---|---|
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | CLID#3 |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of __ONE HUNDRED SIXTY FOUR THOUSAND AND NO/100__

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On 05-31-2005 I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are __LOAN BALANCE CANNOT BE GREATER THAN 80% OF THE APPRAISED VALUE OF THE HOME__

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __05-31-2005__ at the rate of __7.500__ % per year until __05-31-2008__

☐ **Variable Rate:** This rate may then change as stated below.

  ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

  ☐ **Frequency and Timing:** The rate on this note may change as often as _____
    A change in the interest rate will take effect _____

  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____

  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.      ☐ The amount of the final payment will change.
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __ACTUAL/360__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than __1__ days after it is due, I agree to pay a late charge of __1.000% OF THE LATE AMOUNT WITH A MIN OF $5.00__

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: __THERE ARE NO ADDITIONAL CHARGES__

**PAYMENTS:** I agree to pay this note as follows:

ON DEMAND, BUT IF NO DEMAND IS MADE THEN INTEREST ON THE AMOUNT OF CREDIT OUTSTANDING DUE AT MATURITY AND PRINCIPAL DUE ON 05-31-2008.

☐ **Unpaid Interest:** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date): 1ST DEED OF TRUST DATED 05/31/05 ON PROPERTY SITUATED IN DIST -6 KNOX CO, TN AND BEING LOT 72 VISTA HILLS S/D
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is __CONST. OF PRESOLD HOME__

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.**

_Andy Bowman_
ANDY BOWMAN

Signature for Lender

_[signature]_
KEITH NOE, VICE PRESIDENT

UNIVERSAL NOTE
Exper™ © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-TN 3/7/2002

**EXHIBIT**

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Tennessee will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this note without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me or allow purchases on credit by me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest); or

(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

(page 2 of 2)

This document was prepared by (name and address) .............
COMMERCIAL BANK, INC..............................................
6710 CUMBERLAND GAP PARKWAY, HARROGATE, TN, 37752...........
Grantor's source of title is: ............................................
..........................................................................
..........................................................................
The   MAXIMUM   PRINCIPAL   INDEBTEDNESS   for
Tennessee Recording Tax Purposes is   $ .184,000.00.............

--------- State of Tennessee ---------                 -------- Space Above This Line For Recording Data --------

# DEED OF TRUST (With Future Advance Clause)

☒ This Is A Construction Mortgage Within The Meaning Of Tenn. Code Ann. § 47-9-334(h)
☐ This Is A Construction Refinance Mortgage Within The Meaning Of Tenn. Code Ann. § 47-9-334(h)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 05:31:2005.................................
   and the parties, their addresses and tax identification numbers, if required, are as follows:
   GRANTOR:   ANDY BOWMAN
              122 WEBSTER RD
              LAKE CITY, TN  37769

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and
   acknowledgments.
   TRUSTEE:   DENNIS MICHAEL ROBERTSON
              P O BOX 678
              HARROGATE, TN  37752

   LENDER:    COMMERCIAL BANK, INC.
              ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF TENNESSEE
              6710 CUMBERLAND GAP PARKWAY
              P O BOX 400 HARROGATE, TN  37752

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
   secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor
   irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following
   described property: SEE ATTACHED EXHIBIT A

   The property is located in ...................KNOX.................................... at .LOT.72 VISTA HILLS S/D...........
                                          (County)
   ......................................................, .................POWELL...................., Tennessee .........37849.........
                    (Address)                                      (City)                                          (ZIP Code)
   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
   rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that
   may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time
   shall not exceed $ .184,000.00........................................... This limitation of amount does not include
   interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not
   apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of
   the covenants contained in this Security Instrument. Notice: Pursuant to Tenn. Code Anno. § 47-28-105, Borrower
   may reduce the limit on the maximum amount of total principal indebtedness to be secured under this Deed of
   Trust.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt
      described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts
      below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity
      dates, etc.)*

TENNESSEE - DEED OF TRUST  (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Ex*pere*®  ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-DT-TN  8/13/2002                    *Ab*    (page 1 of 4)

EXHIBIT

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.
Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.
Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document

Exꝑereḷ™ ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-TN 8/13/2002

 (page 2 of 4)

executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.
At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.
If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.
Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.
All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance" or "regulated substance" under any Environmental Law.
Grantor represents, warrants and agrees that:
A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.
D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of any or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.
All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.
Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be

Exṗereﬅ  ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-DT-TN  8/13/2002

*(page 3 of 4)*



Inst:200606168181496
PAGE: 3 OF 5

paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

26. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtesy and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

27. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

   ☐ **Open End Mortgage.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Anno. § 47-28-103 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on ................................. if not paid earlier. The due date may not be more than twenty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

   ☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

   ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
     ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ...........................................

   ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) ANDY BOWMAN                    (Date)        (Signature)                                (Date)

**ACKNOWLEDGMENT:**
STATE OF ........................ TENNESSEE ........................, COUNTY OF ........................ KNOX ........................ } ss.
Personally appeared before me, the notary named below, ANDY BOWMAN ........................................................

with whom I am personally acquainted, and who acknowledged that he/she/they .................... executed
.................................. for the purposes therein contained.
....................... office, this .......... 31ST .......... day of ................... .................. .......
My commission expires: 31-03-2007
                                                                KEITH NOE ..................................
                                                                      (Notary Public)

Please return this document after recording to: COMMERCIAL BANK, INC. 6710 CUMBERLAND GAP PARKWAY, HARROGATE, TN 37752
Mail Tax Bills to: ...................................

Experts  ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT TN 6/13/2002

Exhibit "A".....Deed of Trust.......Andy Bowman........Commercial Bank, Inc.

Situated in District No. Six (6) of Knox County, Tennessee, without the corporate limits of the City of Knoxville, Tennessee, and being known and designated as Lot Seventy-Two (72), of Vista Hills Subdivision, Unit 1, as shown by the map of same of record as Instrument No. 200209190024403, in the Register's Office for Knox County, Tennessee, to which map specific reference is hereby made for a
more particular description.

This conveyance is made subject to all applicable restrictions, easements, and building set back lines
of record in the Register's Office for Knox County, Tennessee, and subject to the Protective and Restrictive Covenants recorded as Instrument No. 200310240046927.

See Warranty Deed from Quint Bourgeois to Andy Bowman, and recorded as Instrument No. 200506150101495



The Inland Marine Declarations and Endorsement, if any, issued to form a part thereof, completes the Commercial Insurance Policy numbered as follows:

**INLAND MARINE DECLARATIONS**

**BR 61716827**

 

**ZURICH**

☒ **New Policy**
☐ **Renewal of** _____
☐ **Rewrite of** _____

**ASSURANCE COMPANY OF AMERICA**
**NEW YORK, NEW YORK 10038**
**A Stock Company**

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. **THIS IS A COINSURANCE CONTRACT. Please read your policy.**

**1. Named Insured and Mailing Address:**

Andy Bowman
122 Webster Road

Lake City, TN 37769

**3. Policy Period – From Effective Date Of:** __06__ __10__ __2005__
to (check one): ☒ Continuous Reporting  ☐ One Year From Effective Date
12:01 a.m. Standard Time at your mailing address above.

**2. Producer Information (complete A-E)**
A) Name:

Commercial Bank
7400 Maynardville Pike
Knoxville, TN 37938-3719

B) Telephone #: 8659252265
C) Fax #: 8659257219
D) Zurich Producer #: 18160861
E) Field Office Name: TENNESSEE/ALABAMA
F) Field Office Code: NA

**4. Form of Business:** ☒ Individual  ☐ Partnership  ☐ Corporation  ☐ Joint Venture  ☐ Other _____

**5. Limits of Insurance** (select *either* One-Shot *or* Reporting Form option below)

| ☒ **Reporting Form (continuous policy)** | | ☐ One-Shot (non-reporting form/single structure policy) HBIS-1 |
|---|---|---|

☒ **Annual Rate**  ☐ **Monthly Rate (HBIS-4)**
☐ Including Existing Building or Structure (HBIS-37)

☐ 1-12 Family Dwelling  ☐ Commercial Structure
☐ Including Existing Building or Structure (HBIS-37)
Property Location

| | | | | | | |
|---|---|---|---|---|---|---|
| A) Any one structure* | $ | 3,000,000 | | A) Any one structure | $ | _____ |
| B) Property temporarily at any other premises | $ | 10,000 | | B) Property temporarily at any other premises | $ | 10,000 |
| C) Property in transit | $ | 25,000 | | C) Property in transit | $ | 25,000 |
| D) All covered property at all locations | $ | 5,000,000 | | D) All covered property at all locations (same as A unless otherwise noted) | $ | _____ |
| E) Development/Subdivision Fences/Walls or Signs | | Per Report | | E) Development/Subdivision Fences/Walls or Signs | $ | 0 |
| F) Rate | | Per Report | | F) Rate | $ | 0 |
| G) Premium | | Per Report | | G) Premium | $ | _____ |
| H) | | Per Report | | H) | $ | _____ |
| I) **Total Fully Earned Policy Premium** *\* Subject to underwriting guidelines* | | Per Report | | I) **Total Fully Earned Policy Premium** (minimum premium applicable) | $ | _____ |

**6. Deductible** (*minimum $500 unless otherwise indicated*): ☒ $1,000  ☐ $2,500  ☐ $5,000  ☐ Other _____

**7. Forms Applicable To All Coverage Parts:**

| | | | |
|---|---|---|---|
| ☒ 40471 | Builders Risk Coverage Form | ☐ HBIS-42 | Florida Fraud Statement |
| ☒ 47681 | Comm. Inland Marine Coverage Part | ☐ HBIS-43 | Windstorm Percentage Deductible |
| ☒ CM0001 | Comm. Inland Marine Conditions | ☐ HBIS-44 | New York Fraud Statement |
| ☒ IL0017 | Common Policy Conditions (IL0146 in WA) | | **Other Forms:** (list other applicable state and/or HBIS |
| ☐ HBIS-58 | Development/Subdivision Walls/Fences/Signs | | forms; all required state forms applicable) |
| ☐ 9H0003 | Florida Builders Risk Declarations | | IL0250, HBIS-58, U-GU-630-A, HBIS-67 |
| ☐ HBIS-35 | Windstorm or Hail Exclusion | | _____ |
| ☐ HBIS-37 | Existing Building(s) or Structure(s) | | _____ |

Countersigned: _____          By: _____
              **Date**                                    **Authorized Representative**

FM 170001 Rev. 07/00

**INSURED COPY      MORTGAGEES COPY      AGENT COPY      BUILDERS RISK PL**

**EXHIBIT**

C

# Commercial Inland Marine Coverage Part Quick Reference

## READ YOUR POLICY CAREFULLY

---

### DECLARATIONS PAGE

Names Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance

---

### COVERAGE FORM(S)

**A. COVERAGE**

1) Covered Property
2) Property Not Covered
3) Covered Causes of Loss
4) Additional Coverage -- Collapse
5) Coverage Extensions (if applicable)

**B. EXCLUSIONS**

- Earthquake (if applicable)
- Governmental Action
- Nuclear Hazard
- War and Military Action
- Water (if applicable)
- Other Exclusions

**C. LIMITS OF INSURANCE**

**D. DEDUCTIBLE (if applicable)**

**E. ADDITIONAL CONDITIONS**

**F. DEFINITIONS**

---

### ENDORSEMENTS (if applicable)

---

### COMMERCIAL INLAND MARINE CONDITIONS

**LOSS CONDITIONS**

A. Abandonment
B. Appraisal
C. Duties in the Event of Loss
D. Insurance Under Two or More Coverages
E. Loss Payment
F. Other Insurance
G. Pair, Sets or Parts
H. Privilege to Adjust With Owner
I. Recoveries
J. Reinstatement of Limit After Loss
K. Transfer of Rights of Recovery Against Others to Us

**GENERAL CONDITIONS**

A. Concealment, Misrepresentation or Fraud
B. Legal Action Against Us
C. No Benefit to Bailee
D. Policy Period
E. Valuation

---

### COMMON POLICY CONDITIONS

A. Cancellation
B. Changes
C. Examination of Your Books and Records
D. Inspection and Surveys
E. Premiums
F. Transfer of Your Rights and Duties Under This Policy

Copyright, Insurance Services Office, Inc., 1982, 1984

47681 Rev. 9-93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

\* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. Paragraph 5. of the **CANCELLATION** Common Policy Condition is replaced by the following:

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

a. We cancel; or

b. The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the **CANCELLATION** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

1. Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

2. Your conviction of a crime increasing any hazard insured against;

3. Discovery of fraud or material misrepresentation on the part of either of the following:

a. You or your representative in obtaining this insurance; or

b. You in pursuing a claim under this policy;

4. Failure to comply with written loss control recommendations;

5. Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

6. Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

7. Your violation or breach of any policy terms or conditions; or

8. Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

Copyright, Insurance Services Office, Inc., 1997

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

   a. We have offered to issue a renewal policy; or

   b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following is added to the **PREMIUMS** Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

Copyright, Insurance Services Office, Inc., 1997

IL 02 50 04 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

IL 00 17 11 85
Copyright, Insurance Services Office, Inc., 1982, 1983

Case 3:07-cv-00388   Document 1-1   Filed 10/09/07   Page 24 of 65   PageID #: <pageID>

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

**IL 00 17 11 85**

## DEVELOPMENT/SUBDIVISION FENCES, WALLS AND /OR SIGNS COVERAGE

**THIS ENDORSEMENT CHANGES THE BUILDER'S RISK COVERAGE FORM. PLEASE READ IT CAREFULLY.**

## A. COVERAGE

We will pay for the direct physical *loss* to Covered Property caused by or resulting from a Covered Cause of Loss.

1. Covered Property

   Covered Property, as used in this Endorsement, means free standing fences, walls and/or signs erected by you or on your behalf, at a development or subdivision. This includes entrance-way signs or walls, retention pond fences and fences or walls that borders the development or subdivision.

2. Property Not Covered

   Covered Property, as used in this endorsement, does not include:

   a. Gate Houses or Guard Houses;

   b. Retaining walls;

   c. Fences or walls that are assigned to a specific location; or

   d. Property that is more specifically insured in this or another insurance policy, except for the excess of the amount due (whether you can collect or not) from that other insurance.

3. Limits of Insurance

   The most we will pay for *loss* to free standing fences, walls and/or signs is the limit listed on the report or Declarations Page.

4. When Coverage Begins and Ends

   We will cover risk of *loss* from the time when you are legally responsible for the property on or after the effective date of this policy, if all other conditions are met. Coverage will end at the earliest of the following:

   a. Once your interest in the property ceases;

   b. When you abandon the development or subdivision;

HBIS 58
Rev. 01-2000

c.     Once the Covered Property is accepted by the owner or buyer; or

d.     When this policy expires or is cancelled.

5.     Coinsurance

For coverage provided by this Development/Subdivision Free Standing Fences, Walls and/or Signs Endorsement, SECTION **E. ADDITIONAL CONDITIONS,** 8. COINSURANCE does not apply.

All other provisions in your policy will apply to this coverage unless they are specifically changed by provisions of this endorsement.

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the loss or damage. Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the loss or damage occurred.

4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

2. We will not pay you more than your financial interest in the Covered Property.

3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

5. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of the loss; or

   b. An appraisal award has been made.

Copyright, ISO Properties, Inc., 2003

**6.** We will not be liable for any part of a loss that has been paid or made good by others.

## F. Other Insurance

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## G. Pair, Sets Or Parts

### 1. Pair Or Set

In case of loss or damage to any part of a pair or set we may:

**a.** Repair or replace any part to restore the pair or set to its value before the loss or damage; or

**b.** Pay the difference between the value of the pair or set before and after the loss or damage.

### 2. Parts

In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

## J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and

must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property.

**2.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**a.** Someone insured by this insurance; or

**b.** A business firm:

**(1)** Owned or controlled by you; or

**(2)** That owns or controls you.

This will not restrict your insurance.

## GENERAL CONDITIONS

## A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all the terms of this Coverage Part; and

**2.** The action is brought within 2 years after you first have knowledge of the direct loss or damage.

## D. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## E. Policy Period, Coverage Territory

We cover loss or damage commencing:

**1.** During the policy period shown in the Declarations; and

**2.** Within the coverage territory.

## F. Valuation

The value of property will be the least of the following amounts:

**1.** The actual cash value of that property;

Copyright, ISO Properties, Inc., 2003

2. The cost of reasonably restoring that property to its condition immediately before loss or damage; or

3. The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.


**ZURICH**

# IMPORTANT DISCLOSURE NOTICE

We are making the following informational disclosures in compliance with The Terrorism Risk Insurance Act of 2002. No action is required on your part.

## Disclosure of Terrorism Premium

The premium charge for risk of loss resulting from acts of terrorism (as defined in the Act) under the policy is $ _____ . This amount is reflected in the total premium for the policy.

## Disclosure of Availability of Coverage for Terrorism Losses

As required by the Terrorism Risk Insurance Act of 2002, the member companies of Zurich North America make available coverage for losses resulting from acts of terrorism (as defined in the Act) with terms, amounts, and limitations that do not differ materially as those for losses arising from events other than acts of terrorism.

## Disclosure of Federal Share of Insurance Company's Terrorism Losses

The Terrorism Risk Insurance Act of 2002 establishes a mechanism by which the United States government will share in insurance company losses resulting from acts of terrorism (as defined in the Act) after an insurance company has paid losses in excess of an annual aggregate deductible. For 2002, the insurance company deductible is 1% of direct earned premium in the prior year; for 2003, 7% of direct earned premium in the prior year; for 2004, 10% of direct earned premium in the prior year; and for 2005, 15% of direct earned premium in the prior year. The federal share of an insurance company's losses above its deductible is 90%. In the event the United States government participates in losses, the United States government may direct insurance companies to collect a terrorism surcharge from policyholders. The Act does not currently provide for insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.

## Definition of Act of Terrorism

The Terrorism Risk Insurance Act defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of title 49, United 17 States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

**These disclosures are informational only and do not modify the policy or affect your rights under the policy.**

Copyright Zurich American Insurance Company 2002

U-GU-632-A (11/02)

**DEDUCTIBLE AMENDATORY ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE BUILDER'S RISK COVERAGE FORM.
PLEASE READ IT CAREFULLY.**

**SECTION D. DEDUCTIBLE replaced by the following:**

**D. DEDUCTIBLE**

We will not pay for *loss* in any one occurrence until the amount of covered *loss* exceeds the Deductible shown in the Declarations. We will then pay the amount of covered *loss* which exceeds the Deductible, up to the Limit of Insurance. This Deductible applies separately to each building or structure, described in the Declarations or reported to us, if two or more location(s) sustain *loss*.

## BUILDER'S RISK COVERAGE FORM

This form is subject to the information in the Declarations and the Policy Conditions, Schedules and Endorsements.

Throughout this policy, the words **you** and **your** refer to the Named Insured shown in the Declarations. The words **we**, **us** and **our** refer to the Company providing this insurance.

Words and phrases that appear in *italics* have special meaning. Refer to Section F. DEFINITIONS.

A.    COVERAGE

We will pay for direct physical *loss* to Covered Property from any Covered Cause of Loss described in this Coverage Form.

1.    COVERED PROPERTY, as used in the Coverage form means:

a.    Property which has been installed, or is to be installed in any commercial structure and/or any single family dwelling, private garage, or other structures that will be used to service the single family dwelling at the location which you have reported to us. This includes:

(1)    Your property;

(2)    Property of others for which you are legally responsible;

(3)    Paving, curbing, fences and outdoor fixtures;

(4)    Trees, shrubs, plants and lawns installed by you or on your behalf;

(5)    Completed single family dwelling(s) which is being used as a Model Home when reported to us as such on monthly reports with an amount shown; and

(6)    Foundations of buildings and foundations of structures in the course of construction.

2.    PROPERTY NOT COVERED

Covered Property does not include:

a.    Existing building or structure to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed;

b.    Plans, blueprints, designs or specifications, except as provided in Additional Coverage section of this Coverage Form;

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 1 of 18

c. Land and water;

d. *Existing Inventory*, unless specifically endorsed;

e. Contractors tools and equipment.

3 COVERED CAUSE OF LOSS

Covered Cause of Loss means risk of direct physical *loss* to Covered Property, except those causes of *loss* listed in the Exclusions.

4. ADDITIONAL COVERAGE

a. Collapse

We will pay for direct physical *loss* to Covered Property, caused by collapse of all or part of a building or structure insured under this Coverage Form, if the collapse is caused by one of more of the following:

(1) Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riots; civil commotion; vandalism; breakage of glass; falling objects; weight of snow, ice or sleet; *water damage*; but only if the causes of *loss* are otherwise covered in this coverage Form;

(2) Hidden decay;

(3) Hidden insect or vermin damage;

(4) Weight of people or personal property;

(5) Weight of rain that collects on a roof;

(6) Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form.

b. Scaffolding, Construction Forms and Temporary Structures

(1) We will pay for direct physical *loss* which is caused by or results from a Covered Cause of Loss, to scaffolding, construction forms and temporary structures (including office and tool trailers), but only while they are at a construction site you have reported to us. The most we will pay for *loss* to scaffolding, construction forms and temporary structures

is $20,000.

(2) We will also pay for the cost of re-erection of the scaffold if the *loss* of the scaffolding is caused by or results from a Covered Cause of Loss. However, the most we will pay for the re-erection of scaffolding is $10,000.

No deductible applies to this Additional Coverage.

c. Debris Removal

We will pay your expenses to remove debris of Covered Property. This debris must result from a *loss* that we cover under this Coverage Form. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical *loss*. If the sum of the *loss* and debris removal expenses exceeds the limit of insurance applicable to the property, we will pay an additional amount of debris removal expenses you incur in excess of the limit of insurance applicable to the property up to, but not exceeding $20,000.

This Additional Coverage does not apply to costs to:

(1) Extract *pollutants* from land or water; or

(2) Remove, restore or replace polluted land or water.

No deductible applies to this Additional Coverage.

d. Back-up or overflow of Sewers, Drains or Sumps

We will pay for *loss* to Covered Property caused by water that backs up or overflows from a sewer, drain or sump from within the reported location.

The most we will pay for *loss* caused by water that backs up or overflows from a sewer, drain or sump is $5,000.

No deductible applies to this Additional Coverage.

e. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $10,000 for your liability for fire department service charges which are:

(1) Assumed by contract or agreement prior to *loss*; or

(2) Required by local ordinance.

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 3 of 18

Case 3:07-cv-00388    Document 1-1    Filed 16/09/07    Page 35 of 65    PageID #: <pageID>

No deductible applies to this Additional Coverage.

f.     Valuable Papers and Records

We will pay for *loss* to which is caused by or results from a Covered Cause of Loss that applies to your costs to Valuable Papers and Records meaning inscribed, printed or written documents, records including deeds, drawings, maps, mortgages and includes those which exist on electronic or magnetic media.

We will pay the cost of blank materials for reproducing and labor to transcribe or copy when there is a duplicate.

We will pay your cost to research, replace or restore the lost information on lost or damaged valuable papers or records for which duplicates do not exist.

The most we will pay under this Additional Coverage is $20,000.

No deductible applies to this Additional Coverage.

g.     *Pollutant* Clean-up and Removal

We will pay your expense to extract *pollutants* from land or water at locations reported to us if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor, or assess the existence, concentration or effects of *pollutants*. But, we will pay for testing which is performed in the course of extracting the *pollutants* from land or water.

The most we will pay under this Additional Coverage is $15,000 for the sum of all expenses which are incurred as a result of all Covered Causes of Loss during each separate 12 month period from the effective date of the policy.

No deductible applies to this Additional Coverage.

h.     Ordinance or Law – Direct Damage

1.     Coverage for *Loss* to Undamaged Portion of the Building or Structure

(a)     If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for *loss* to the

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 4 of 18

Case 3:07-cv-00388   Document 1-1   Filed 10/09/07   Page 36 of 65   PageID #: <pageID>

undamaged portion of the property as a consequence of enforcement of any ordinance or law that:

    (1)    Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

    (2)    Regulates the construction or repair of property, or establishes zoning or land use requirements at the construction site; and

    (3)    Is in force at the time of *loss*.

(b)    Coverage for *loss* to the undamaged portion of the structure is included within the applicable limit of insurance for that location at the construction site.

**This only applies when the ordinance or law went into effect after the start of the construction of the structure or dwelling.**

2.    Demolition Cost Coverage

    (a)    If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay the cost to demolish and clear the construction site of undamaged parts of the property, caused by enforcement of building, zoning or land use ordinance or law.

3.    Increased Cost of Construction Coverage

    (a)    If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for the increased cost necessary to repair or reconstruct the damaged portions of that Covered Property when the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law. If the Covered Property is repaired or rebuilt, it must be intended for the same occupancy as the property prior to the *loss*, unless otherwise required by zoning or land use ordinance or law.

    (b)    If the ordinance or law requires relocation to another site, we will pay the increased cost of construction at the new site as set forth below in h. 4.

4.    The most we will pay for Demolition Cost Coverage and Increased Cost of Construction Coverage is the lesser of the following;

    (a)    the amount of the *loss*;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

        (b)      the applicable limit of insurance; or

        (c)      $1,000,000 in any one *loss.*

5.    We will not pay under this Coverage for Loss to the Undamaged Portion of the Building or Structure, Demolition Cost Coverage, or Increased Cost of Construction Coverage for costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of *pollutants.*

6.    In the event that this policy is endorsed to provide coverage for existing building(s) or structure(s), or the policy covers renovation, remodeling or other work being done on such building(s) or structure(s), this Additional Coverage shall not apply to such building(s) or structure(s).

i.    Preservation of Property

If it is necessary to move Covered Property from the location reported to us or described on the Declarations Page, to preserve it from *loss* by a Covered Cause of Loss, we will pay for any direct physical *loss* to that property:

1    While it is being moved or while temporarily stored at another location; and

2    Only if the *loss* occurs within 30 days after the property is first moved.

This Additional Coverage is part of, and not in addition to, the Limit of Insurance applicable to the Covered Property.

## B.   EXCLUSIONS

1.    We will not pay for a *loss* caused directly or indirectly by any of the following. Such *loss* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the *loss.*

    a.    Governmental Action

Seizure or destruction of property by order of any governmental authority. But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if that fire would be covered under this Coverage Form.

    b.    Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the *loss* caused by that fire.

c.   War and Military Action

(1)   War, including undeclared or civil war;

(2)   Warlike action by a military force, including action hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

(3)   Insurrection, rebellion, revolution, usurped power or action taken by government authority in hindering or defending against any of these.

d.   Earth Movement

(1)   Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the *loss* caused by that fire or explosion.

(2)   Volcanic Action

Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the *loss* caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct *loss* resulting from the eruption of a volcano when the *loss* is caused by:

(a)   Airborne volcanic blast or airborne shock waves;

(b)   Ash, dust or particulate matter; or

(c)   Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical *loss* to the described property.

This exclusion does not apply to Covered Property while in transit.

e.   Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

(2) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b) The *loss* is caused by or results from thawing of snow, sleet or ice on the building or structure.

(3) Mudslide or mudflow;

(4) Water that backs up or overflows from a sewer, drain or sump, except as provided in the Additional Coverages section in this Coverage Form;

(5) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if water, as described in e.(1) through e.(5) above, results in fire, explosion or sprinkler leakage, we will pay for the *loss* caused by that fire, explosion or sprinkler leakage.

2. We will not pay for a *loss* caused by or resulting from any of the following:

a. Delay, loss of use, or loss of market. This does not include *profit* if reported in compliance with the Reporting Provision section of this Coverage Form;

b. Dishonest or criminal act by you, any of your partners, employees or leased employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.

This exclusion applies:

(1) while acting alone or in collusion with others; or

(2) whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees or leased employees; but theft by employees or leased employees is not covered.

This exclusion does not apply to Covered Property while it is entrusted to others who are carriers for hire.

c.   Unexplained or mysterious disappearance except for property in custody of a carrier for hire.

d.   Shortage of property found on taking inventory.

e.   Penalties for noncompliance with contract conditions.

f.   Collapse, except as provided in the Additional Coverage section in this Coverage Form.

g.   (1)   Wear and tear;

(2)   Any quality in the property itself that causes it to damage or destroy itself; or that causes gradual deterioration;

(3)   Insects, vermin, rodents;

(4)   Corrosion, rust, fungus, mold, **mildew**, rot;

(5)   Dampness, changes in or extremes of temperatures, freezing;

However, we will cover freezing *loss* to property in the building reported to us, if you have shut off the water supply and drained the plumbing systems and appliances or made a reasonable effort to maintain heat in the building.

(6)   Settling, cracking, shrinking, or expansion to any Covered Property.

h.   Rain, snow, sleet, sand, dust if Covered Property is in the open. This does not apply to Covered Property in the custody of a carrier for hire.

i.   Artificially generated electrical current; mechanical breakdown; rupturing or bursting caused by centrifugal force.

3.   We will not pay for a *loss* caused by or resulting from any of the following. But if *loss* by a Covered Cause of Loss results, we will pay for the resulting *loss* caused by that Covered Cause of Loss.

a.   Weather conditions which contribute in any way to a cause or event excluded in paragraph 1. above to produce the *loss*.

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 9 of 18

Case 3:07-cv-00388   Document 1-1   Filed 10/09/07   Page 41 of 65   PageID #: <pageID>

b. Acts or decisions, including the failure to act or decide, of any person, group, or organization representing a governmental, regulatory or controlling body.

c. Faulty, inadequate or defective:

    (1) Planning, zoning, development, surveying, siting;

    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (3) Materials used in repair, construction, renovation or remodeling; or

    (4) Maintenance;

    of all or part of any Covered Property wherever located.

d. The discharge, dispersal, seepage, migration, release or escape of *pollutants,* except as provided under Additional Coverages.

## C. LIMITS OF INSURANCE

The most we will pay for *loss* to any one building or structure is the lesser of the Limit of Insurance shown in the Declarations for that one building or structure or the *total estimated completed value* that was reported to us for that one building or structure. The most we will pay for *loss* in any one occurrence is the limit shown in the Inland Marine Declarations for all Covered Property at all locations.

## D. DEDUCTIBLE

We will not pay for *loss* in any one occurrence until the amount of covered *loss* exceeds the Deductible shown in the Declarations. We will then pay the amount of covered *loss* which exceeds the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1. COVERAGE TERRITORY

The coverage territory is United States of America (including its territories and possessions) and Canada

2. WHERE COVERAGE APPLIES

This coverage applies to Covered Property while within the Coverage Territory while:

a. At any construction site you have reported;

b. Temporarily at other premises, if the property has been designated to be installed at a location you have reported to us; or

c. In transit except imports or exports while ocean marine coverage applies.

3. WHEN COVERAGE BEGINS AND ENDS

We will cover risk of *loss* from the time when you are legally responsible for the Covered Property on or after the effective date of this policy if all other conditions are met. Coverage will end at the earliest of the following:

a. Once your interest in the Covered Property ceases;

b. Ninety days after initial occupancy of the Covered Property unless:

   (1) that building is being used as a Model Home;

   (2) that building is being remodeled and is a single family dwelling; or

   (3) that building is being used as a *Model Home Leaseback*.

c. When the Covered Property is leased to or rented to others

   (1) for a single family dwelling, when the building is leased or rented to others;

   (2) for a multiple family dwelling, when 50% or more of the units in the structure are leased to or rented to others; or

   (3) for a commercial structure, when 75% or more of the square footage space is leased to or rented to others);

   This does not apply to pre-leases established prior to construction.

d. When you abandon the reported location with no intention to complete it;

e. At the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium. If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the reporting provision below. You have the option to report the same location a third time at the end of the second 12 month period, provided the required additional premium is paid. Coverage for this third 12

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 11 of 18

Case 3:07-cv-00388   Document 1-1   Filed 10/09/07   Page 43 of 65   PageID #: <pageID>

month term will end at the end of 12 months from the month you re-reported the location for a third term;

**Coverage for Existing Buildings or Structures that are being or have been remodeled:**

**At the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium. If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the reporting provision below. There is no option to report a third year.**

f.    When permanent property insurance applies; or

g.    Once the Covered Property is accepted by the owner or buyer.

4.    REPORTING PROVISIONS

a.    Each month you must report to us the *total estimated completed values* of all Covered Property for each location started during the previous month. This report must be made on the form we provide.

For the purpose of these reports, a location is started when you first put any building materials (including the foundation) on the construction site.

If your policy is endorsed to provide coverage for existing structures that you are renovating and/or adding onto and for which you seek coverage, a location is started on the earlier of the following:

(1)    when you first put any building materials (which includes any new, altered or expanded foundation) on the site; or

(2)    when you acquire title to the existing structure.

b.    You must pay premiums based on the *total estimated completed value* of the Covered Property using the rate we furnish. You must send your premium payment with the report for the reported locations to be covered. **We must receive your report and the accompanying premium payments at the address designated in our form by the last business day of the month in which the report is due, or the report is late.**

c.    **If a report is received late, coverage begins on the day the report is received, and there is no coverage for any *loss* that occurred before that report was received.** Our acceptance of a report of values and premium payment does not waive or change any part of this policy nor stop us from asserting any right we have under the terms of this policy.

d. The premium charged is fully earned and no refund is due you when coverage ends.

e. A dwelling being used as a Model Home must be reported and should be identified as a Model Home.

f. You will keep accurate construction records regarding property we cover under this policy. This includes the *total estimated completed value* of the Covered Property and a record of all contracts of sale dealing with the Covered Property.

g. If at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. If at the end of the second 12 months from the time you first reported a start to us and you still have that location in your inventory, you may report that location to us a third time.

**Coverage for Existing Buildings or Structures that are being or have been remodeled:**

**If at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. There is no option to report a third time (year).**

5. MORTGAGE HOLDERS CLAUSE

a. The term mortgage holder includes trustees.

b. We will pay for covered *loss* to buildings or structures to each mortgage holder shown on a Certificate of Insurance issued by the current Agent of Record.

c. The mortgage holder has the right to receive *loss* payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive *loss* payment if the mortgage holder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of *loss* within 60 days after receiving notice from us of your failure to do so;

(3) Has notified us of any change in ownership, occupancy or substantial

change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

e.  If we pay the mortgage holder for any *loss* and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will endeavor to give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g.  We will not notify the mortgage holder if:

(1) You cancel this policy, or

(2) Coverage ends for any reason other than if we cancel the policy.

6.  **VALUATION**

General Conditions E. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

In the event of *loss*, the value of the property will be determined as of the time of the *loss*.

a.  The value of the property will not be more than the amount necessary to replace the structure or repair the structure, whichever is less, to the same point of completion that had been achieved immediately before the *loss*.

b.  If the *loss* involves building materials which have not been installed, the value

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 14 of 18

Case 3:07-cv-00388   Document 1-1   Filed 10/09/07   Page 46 of 65   PageID #: <pageID>

of the property will not be more than the amount necessary to replace the materials with comparable type or quality.

7.    WAIVER OF COINSURANCE

If there is a *loss* to Covered Property and the cost to repair or replace such property is less than or equal to $25,000 we will **adjust** the *loss* without regard to SECTION E. ADDITIONAL CONDITIONS 8. COINSURANCE

8.    COINSURANCE

If the reported value is less than the *total estimated completed value*, you will bear a portion of any *loss*.  The amount we will pay is determined by the following steps:

a.     Divide the reported value by the *total estimated completed value* of the Covered Property;

b.     Multiply the total amount of the covered *loss* before the application of any deductible by the percentage determined in step "a";

c.     Subtract the deductible from the figure determined in step "b".

**Example No. 1**

(This example assumes there is <u>no</u> penalty for underinsurance.)

| | |
|---|---|
| Deductible | $1000 |
| Reported Value | $100,000 |
| *Total Completed Estimated Value* | $100,000 |
| Amount of *loss* | $60,000 |

A.     Reported Value/*Total Estimated Completed Value*
         $100,000/$100,000 = 1.00

B.     Amount of *Loss* x Percentage in A

         $60,000 x 1.00 = $60,000

C.     Deductible Amount Subtracted from results of B

         $60,000 - $1,000 = $59,000

         Total Amount of *Loss* Payable = $59,000

**Example No. 2**

(This example assumes there is a penalty for underinsurance)

| | |
|---|---|
| Deductible | $1000 |
| Reported Value | $100,000 |
| *Total Estimated Completed Value* | $120,000 |
| Amount of *Loss* | $60,000 |

A.  Reported Value/*Total Estimated Completed Value*

$100,000/$120,000 = .833

B.  Amount of *Loss* x Percentage in A

$60,000 x .833 = $49,980

C.  Deductible Amount Subtracted from results of B

$49,980 - $1,000 = $48,980

Total Amount of *Loss* Payable = $48,980

9    CANCELLATION

a.    The following is added to the Cancellation Condition in the Common Policy Conditions and applies only to the coverage provided in this Coverage Form:

Cancellation of this policy will not affect the insurance in force on any location which you have reported to us or on any location which started before the effective date of the cancellation notice if that location is reported on the report due and premium payment is made. However, you cannot report any location currently in your inventory a second time after the effective date of cancellation.

However, coverage may be canceled on any location if notice is given in writing in accordance with the cancellation provision in the Common Policy Conditions, or state amendatory endorsements.

b.    Common Policy Conditions IL0017 Section A Cancellation Paragraph 5 is replaced by the following:

5.    The premium for this coverage is fully earned and no refund is due when the policy is canceled.

10.    LIBERALIZATION CLAUSE

If we adopt any revision, which would broaden the coverage under this Coverage Form without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

40471
Rev. 11-2002
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995
Page 16 of 18

Case 3:07-cv-00388   Document 1-1   Filed 08/09/07   Page 48 of 65   PageID #: <pageID>

11. INTEREST OF SUBCONTRACTORS, SUB-SUBCONTRACTORS, SUPPLIERS

We cover the interest, which your subcontractors, your sub-subcontractors and your suppliers have in the Covered Property, but only while such property is situated at construction sites you have reported to us. This condition does not impair any right of subrogation we would otherwise have.

12. TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after *loss* to impair them. But you may waive your rights against another party in writing:

a. Prior to *loss* to your Covered Property.

b. After a *loss* to your Covered Property only if, at time of *loss*, that party is one of the following:

1. Someone insured by this insurance;

2. A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you;

13. UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

Your failure to disclose all hazards existing as of the inception date of the policy shall not affect the coverage afforded by this policy, provided such failure to disclose all hazards is not intentional and the hazard is reported to us as soon as practicable after you learn about it.

14. REWARD

At our discretion, we may pay up to $10,000 as a reward for information which leads to a conviction in connection with a covered *loss*. The Named Insured and their employees are not eligible for this reward. Any reward payment we make should not affect the Limits of Insurance.

F. DEFINITIONS

1. *Existing Inventory* means buildings or structures where construction was started or completed prior to the inception date of this policy.

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 17 of 18

Case 3:07-cv-00388   Document 1-1   Filed 10/09/07   Page 49 of 65   PageID #: <pageID>

2. *Loss* means accidental loss and accidental damage.

3. *Model Home Leaseback* means a dwelling purchased from the Insured and is then leased back to the Insured, by the purchaser, to be used by the Insured as a Model Home until the purchaser occupies the dwelling as a residence.

4. *Overhead* means those business expenses, other than materials and labor, incurred either directly or indirectly due to the construction of a dwelling or structure including soft costs.

5. *Pollutants* mean any solid, liquid, gaseous or thermal irritant or contaminant. This includes, but is not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

6. *Profit* means the difference between the selling price of the land and completed structure and your cost of the land and the completed structure. If you do not have a signed contract for the sale of the completed structure and land, the allowance for *profit* will not exceed 20%.

7. *Total Estimated Completed Value* means all costs associated with the building and designing of the Covered Property including labor, *overhead* and materials and if included, *profit*.

8. *Water Damage* means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 18 of 18

Case 3:07-cv-00388   Document 1-1   Filed 10/09/07   Page 50 of 65   PageID #: <pageID>

5730009637   001

ZURICH AMERICAN

**SWORN STATEMENT
IN PROOF OF LOSS**

$ 164,000.00
AMOUNT OF POLICY AT TIME OF LOSS
06/10/05
DATE ISSUED
06/10/06
DATE EXPIRED

61716827
POLICY NUMBER
Knoxville, TN
AGENCY AT
COMMERCIAL BANK
AGENT

To the    ☐ ZURICH INSURANCE COMPANY OF SWITZERLAND
          ☐ AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY OF NEW YORK
          ☐ ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS
          X  Assurance Company of America

At time of loss, by the above indicated policy of insurance you insured Andy Bohner

against loss by ___F·rε___ to the property described according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

1. Time and Origin A ___F·rε___ loss occurred about the hour of 4:30 o'clock A. M.
on the 5 day of May 2006. The cause and origin of the said loss were: Fire Destroyed
Cause Undetermined Structure

2. Occupancy: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: Under Construction

3. Title and Interest: At the time of the loss the interest of your insured in the property described therein was Owner of Property. No other person or persons had any interest therein or incumbrance thereon, except: Commercial Bank — Construction Loan

4. Changes: Since the policy was issued there has been no assignment thereof, or change of interest, use, occupancy, location or exposure of the property described, except: None

5. Total Insurance: The total amount of insurance upon the property described by this policy was, at the time of the loss, $ 164,000 as more particularly specified in the apportionment attached, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6. The Actual Cash Value of said property at the time of loss was ........................ $ 164,000

7. The Whole Loss and Damage was ........................................................ $ ''

8. The Amount Claimed under the above numbered policy is ................................ $ ''

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs, by a representative of the above insurance company is not a waiver of any of its rights.

State of  Tennessee                                           [signed] Andy Bohner
                                                                              Insured
County of  Knox

Subscribed and sworn to before me this ___ day of September 2006
[signed] Taina B Cabage

Form 01-40888-A

(Notary seal:)
TAINA B. CABAG...
STATE
TENNESSEE
NOTARY
PUBLIC
KNOX COUNTY

EXHIBIT

## POLICY FORM

Policy Form No. _____ Dated _____
Item 1.S _____ on _____
Item 2.S _____ on _____
Item 3.S _____ on _____
Situated _____
Coinsurance, Average, Distribution, or Deductible Clauses, if any _____
Loss, if any, payable to _____

## STATEMENT OF ACTUAL CASH VALUE AND LOSS AND DAMAGE

| | ACTUAL CASH VALUE | LOSS AND DAMAGE |
|---|---|---|
| Wade Crest Lane  Powell, TN | 164,000 | 164,00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTALS | 164,000 | |

## APPORTIONMENT

| POLICY NO. | EXPIRES | NAME OF COMPANY | ITEM NO. | | ITEM NO. | |
|---|---|---|---|---|---|---|
| | | | INSURES | PAYS | INSURES | PAYS |
| | | No other | | | | |
| | | Insurance | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Totals | | | | | | |

Jun 13 05 09:27a    C   AER                        86582   115              p.1
Jun 10 05 11:04a    Commercial Bank Insurance 865 984-7776          P.2
Certificate BR61716827                                        Page 1 of 1

**TN017-01**

This certificate is provided as evidence of insurance under policy # BR61716827 of the company named herein.

Mortgagee Information:
Name:   Commercial Bank
Address  P. O. Box 400
1:
Address
2:
City:    Harrogate State TN Zip: 37752
Insured Information:
Name:    Andy Bowman
Address  122 Webster Road
1:
Address
2:
City:     Lake City State: TN Zip: 37769

*2-28676922*

Amount of Coverage Per Building
(Completed Value): $164 Premium: $328.00

Effective Date: 06/10/2005 Term: 12 Months

Description and Location of Property to be Insured:
Lot 72, Vista Hills S/D, Powell, TN, 37848

This is to certify that the above is an insured under a builders risk policy issued by a company of The Maryland Insurance Group, covering property identified above from the inception date shown, subject to all terms and conditions contained in the policy. Insurance as provided under the aforementioned policy is subject to all terms, conditions and limitations thereof and shall in no event extend beyond date of termination of the insured's interest in the articles described herein.

06/08/05                               _____
Date                                   Authorized Agent

Agency Producer Number: 18168801
Agency Name: Commercial Bank
Mailing Address: 7400 Maynardville Pike
City: Knoxville State: TN Zip Code: 37938-3719

**WARNING**

This Certificate is issued to protect the mortgagee only. Under the terms of the insured's policy, insured agrees to report all starts and pay the appropriate premium to Builders Risk Plan, P.O. Box 931795, Atlanta, GA 31193-1795. Insured must report all starts shown on this certificate prior to the end of the next month. If insured does not report within this time period, the insured will not be covered.

*Insureds should check with their Zurich Insurance Services agent to make sure they understand the reporting requirements.*

http://ris.zurichns.com/zis/certificate.nsf/pages/4497048C1CA3F7268525701C0059C6FE...  6/10/2005

JUN-10-2005 11:17AM    FAX:865 984 7776          ID:              PAGE:002  R=94%

**EXHIBIT**

# WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC
## ATTORNEYS
900 RIVERVIEW TOWER
900 S. GAY STREET
KNOXVILLE, TENNESSEE 37902-1810

MAILING ADDRESS:
POST OFFICE BOX 900
KNOXVILLE, TN 37901-0900

TELEPHONE (865) 215-1000
TELECOPIER (865) 215-1001

GREGORY C. LOGUE

January 8, 2007

*Via Telecopy (615-244-5467)*
Barry L. Howard, Esq.
Ruth, Howard, Tate & Sowell
150 2nd Avenue North, Suite 201
Nashville, Tennessee 37201

Re:     **Andy Bowman/Commercial Bank**
**Zurich Insurance Policy No. BR61716827**
**Claim No. 5730009637**
**Lot 72, Vista Hills, Unit 1, Powel, Tennessee**

Dear Mr. Howard:

Please be advised this firm represents the interests of Commercial Bank with regard to the above-referenced claim. I have been attempting to obtain information on this file since late October. As you know, the home on Lot 52, Vista Hills Subdivision in Powell, Tennessee was destroyed by fire in May 2006. Commercial Bank is the loss payee and additional insured under the above-referenced policy. It appears that Commercial Bank is entitled to payment pursuant to the standard mortgage holder's clause contained in paragraph 5 of the insurance policy.

I would appreciate you contacting me at your earliest convenience regarding this matter. If Commercial Bank needs to file a sworn proof of loss, I will see that my client does so immediately. At this point, I only recently received your contact information from Mr. Jim Normand, the attorney representing Mr. Bowman. The current balance owing on the mortgage as of today is $173,146.59. Per diem interest is $32.33.

I look forward to hearing from you.

Sincerely yours,

Gregory C. Logue

GCL:ar
cc:     Ms. Rowena Miller
Mr. Keith Noe

012677.0560

**EXHIBIT**

# WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC
### ATTORNEYS
900 RIVERVIEW TOWER
900 S. GAY STREET
KNOXVILLE, TENNESSEE 37902-1810

MAILING ADDRESS:
POST OFFICE BOX 900
KNOXVILLE, TN 37901-0900

TELEPHONE (865) 215-1000
TELECOPIER (865) 215-1001

GREGORY C. LOGUE

January 26, 2007

*Via Telecopy (615-244-5467)*
Barry L. Howard, Esq.
Ruth, Howard, Tate & Sowell
150 2nd Avenue North, Suite 201
Nashville, Tennessee  37201

> Re:   **Andy Bowman/Commercial Bank**
>       **Zurich Insurance Policy No. BR61716827**
>       **Claim No. 5730009637**
>       **Lot 72, Vista Hills, Unit 1, Powell, Tennessee**

Dear Mr. Howard:

I have not heard from you regarding my letter of January 8, 2007 regarding the above-styled matter. I also called you and left a voice mail message requesting an update on the above-styled matter. It is my understanding that the property owner filed a sworn proof of loss in September 2006 regarding a fire which occurred in May 2006. I also understand that Knox County is pressuring Mr. Bowman regarding demolition of the structure.

I would appreciate the courtesy of a phone call or letter regarding this matter.

Sincerely yours,

Gregory C. Logue

GCL:ar
cc:   Ms. Rowena Miller
      Mr. Keith Noe
012677.0560

539692.1

**WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC**
ATTORNEYS
900 RIVERVIEW TOWER
900 S. GAY STREET
KNOXVILLE, TENNESSEE 37902-1810

MAILING ADDRESS:
POST OFFICE BOX 900
KNOXVILLE, TN 37901-0900

TELEPHONE (865) 215-1000
TELECOPIER (865) 215-1001

GREGORY C. LOGUE

February 23, 2007

*Via Telecopy (615-244-5467)*
Barry L. Howard, Esq.
Ruth, Howard, Tate & Sowell
150 2nd Avenue North, Suite 201
Nashville, Tennessee 37201

     Re:    **Andy Bowman/Commercial Bank**
             **Zurich Insurance Policy No. BR61716827**
             **Claim No. 5730009637**
             **Lot 72, Vista Hills, Unit 1, Powell, Tennessee**

Dear Mr. Howard:

     I first wrote you regarding the above-referenced claim on January 8, 2007. I followed up with at least two voice mail messages, and a second letter on January 26, 2007. As you might recall, I represent Commercial Bank and was simply attempting to discover some information regarding the status of the above pending claim regarding a fire which occurred in May 2006. You have ignored my correspondence and phone calls.

     As I pointed out in my earlier letters, Commercial Bank is entitled to payment pursuant to the standard mortgage holders clause contained in paragraph 5 of the insurance policy. Mr. Bowman filed a Sworn Proof of Loss in September 2006 and I view your silence as an affirmation that Commercial Bank does not need to file a separate Proof of Loss to recover under the policy.

     Please accept this letter as demand for payment pursuant to the above-referenced policy pursuant to Tenn. Code Ann. § 56-7-105. I have enclosed the Affidavit of Alan Gilbert, Senior Vice President of Commercial Bank, setting forth the total amount owed to Commercial Bank related to the Note and Deed of Trust owed by Andy Bowman related to the above-referenced claim. If you would like Commercial Bank to file a Sworn Proof of Loss in a different format or form, please forward whatever form or format you desire to my attention and I will promptly supply you any information you request.

542919.1

      If I do not hear from you within sixty days, my client will have no choice but to file suit pursuant to the above-referenced statute.

              Sincerely yours,

              Gregory C. Logue

GCL:ar
cc:    Ms. Rowena Miller
       Mr. Keith Noe
012677.0560

542919.1

ATTORNEYS
900 RIVERVIEW TOWER
900 S. GAY STREET
KNOXVILLE, TENNESSEE 37902-1810

MAILING ADDRESS:
POST OFFICE BOX 900
KNOXVILLE, TN 37901-0900

TELEPHONE (865) 215-1000
TELECOPIER (865) 215-1001

GREGORY C. LOGUE

March 1, 2007

*Via Telecopy (615-244-5467)*
Barry L. Howard, Esq.
Ruth, Howard, Tate & Sowell
150 2nd Avenue North, Suite 201
Nashville, Tennessee 37201

Re:    Andy Bowman/Commercial Bank
       Zurich Insurance Policy No. BR61716827
       Claim No. 5730009637
       Lot 72, Vista Hills, Unit 1, Powell, Tennessee

Dear Mr. Howard:

Knox County Codes Enforcement is putting pressure on our customer, Andy Bowman, to demolish the burned structure on the above-referenced lot. If the structure is not demolished in the immediate future, Codes Enforcement will use their authority to demolish the structure and place a lien against the property. I see no reason to intervene in this matter on behalf of Commercial Bank, but if you have any interest in stopping the demolition procedure, you should let me know as soon as possible. Since you have not corresponded with me, I have no idea as to the status of your investigation into this matter. If you or your client have any problem with the demolition going forward, then you should contact Kim Ailor at the Knox County Codes Enforcement Office at 865-215-3582 in the immediate future. Lastly, it would seem there is coverage for the demolition costs contained in the policy pursuant to the Builders Risk Coverage Form §§ (A)(4)(c) and (A)(4)(h)(2).

Sincerely yours,

Gregory C. Logue

GCL:ar
cc:    Ms. Rowena Miller
       Mr. Keith Noe
       James T. Normand, Esq.
012677.0560

543518.1

## WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC

ATTORNEYS
900 RIVERVIEW TOWER
900 S. GAY STREET
KNOXVILLE, TENNESSEE 37902-1810

MAILING ADDRESS:
POST OFFICE BOX 900
KNOXVILLE, TN 37901-0900

TELEPHONE (865) 215-1000
TELECOPIER (865) 215-1001

GREGORY C. LOGUE

March 16, 2007

*Via Telecopy (615-244-5467)*
Barry L. Howard, Esq.
Ruth, Howard, Tate & Sowell
150 2nd Avenue North, Suite 201
Nashville, Tennessee 37201

     Re:    **Andy Bowman/Commercial Bank**
             **Zurich Insurance Policy No. BR61716827**
             **Claim No. 5730009637**
             **Lot 72, Vista Hills, Unit 1, Powell, Tennessee**

Dear Mr. Howard:

    I have written you regarding this matter on January 8, 2007, January 26, 2007, February 23, 2007, and March 1, 2007. You have ignored each of these letters. I can only hope this letter does not suffer the same fate.

    I do note that you sent a letter to Mr. Bowman's attorney, James T. Normand, on March 1, 2007. Mr. Normand was kind enough to forward a copy of that letter to my attention. In that letter you question certain checks submitted on behalf of Mr. Bowman. I suggest the easiest way to determine the value of a structure and whether loan proceeds were being used to improve the lot and structure would be to review the real estate evaluation and progress reports prepared by Commercial Bank as part of the construction lending process.

    I have in my possession real estate evaluations beginning May 17, 2005 through November 22, 2005 which include pictures and detailed analyses regarding the progress of completion of the structure located on Lot 72, Unit 1 of Vista Hills Subdivision in Powell, Tennessee. The first real estate evaluation includes a picture of a vacant lot and each real estate evaluation thereafter includes a picture of the structure as completed to date. The evaluation completed on November 22, 2005 shows a completed exterior and an 81% total completion with an estimated value of $194,088.00. Therefore, the building was 81% complete six months before this fire which destroyed the home. I can only assume Mr. Bowman continued to improve the structure after November 2005.

545331.1

If this information would assist you in quickly settling this case, please contact me and I will be more than happy to overnight this information to your attention.

Sincerely yours,

Gregory C. Logue

GCL:ar
cc:     Ms. Rowena Miller
         James T. Normand, Esq.

012677.0560

# HOWARD, TATE, SOWELL, WILSON & BOYTE, PLLC

## ATTORNEYS AT LAW

SUITE 201
150 SECOND AVENUE, NORTH
NASHVILLE, TENNESSEE 37201-1931

TELEPHONE (615) 256-1125
FAX (615) 244-5467

WWW.HOWARDTATELAW.COM

BARRY L. HOWARD
WILLIAM H. TATE*
ALAN M. SOWELL
CLIFFORD WILSON
KATHERINE D. BOYTE
RAYMOND S. LEATHERS
MICHAEL H. JOHNSON
WILLIAM R. MEYER

KENNETH M. SWITZER•
MELISSA BRADFORD MULLER
M. KRISTIN SELPH
NATHANIEL K. CHERRY
MARCIA McSHANE WATSON

*RULE 31 LISTED GENERAL CIVIL MEDIATOR
•BOARD CERTIFIED CIVIL TRIAL SPECIALIST

April 23, 2007

James T. Normand, Esq.          BY FEDERAL EXPRESS
Joyce, Meredith, Flitcroft & Normand
30 Kentucky Avenue
Oak Ridge, Tennessee 37830

Re:   Insured: Andy Bowman
      Claim No.: 573-0009637 001 CH
      D/Loss: 5/5/06
      Inland Marine Policy No.: BRH61716827

Dear Mr. Normand:

Enclosed is a check from Zurich Insurance in the amount of $115,640.94. This represents payment for the fire damage to 72 Vista Hills less the $1,000 deductible applicable to the policy.

Based upon the information furnished by Mr. Bowman during the investigation of the loss and his testimony during his examination under oath, and giving Mr. Bowman the benefit of the doubt in regard to some of this information, we believe this is the total amount of the loss which has been properly documented under the Inland Marine policy. As you will see, the check is made payable to Andy Bowman and Commercial Bank, the loss payee under the policy.

This check does not include any payments for demolition of the property which is still being investigated by Zurich.

Very truly yours,

HOWARD, TATE, SOWELL, WILSON & BOYTE, PLLC

Barry L. Howard

BLH:deh
Enclosure
cc:   Gregory C. Logue, Esq.

EXHIBIT

G

COMMERCIAL BANK

# Real Estate Evaluation
### THIS IS NOT AN APPRAISAL

*Kettle*

| | | |
|---|---|---|
| Amount Loan | $ | |
| Dated | | |
| Maturity | | |
| Installments per | $ | |
| | (Year or Month) | |

STAPLE PICTURE HERE
*Cost*

PURPOSE: Mortgage _____ Insurance _____ Collection _____

Request by: Mr(s) *Andy Bowman*
builder - seller - attorney - buyer - broker

Phone _____ Date *1-22-05*

ADDRESS: *Powell, TN.*
CITY/COUNTY: *Knox*     BLK _____ LOT *22*
SUBDIVISION: *Vista Hills*



INDICATE NORTH

SKETCH EXTERIOR PLAN - SHOW DIMENSIONS

SQ. FT. AREAS

# O O D    D A T A

☐ Rural
☐ Under 25%
☐ Slow
☐ Declining
☐ Over Supply
☐ Over 6 Mos.

do ____ % Commercial

(Taking Place (*)

Predominant Occupancy ☐ Owner    ☐ Tenant _____ % Vacant
Single Family Price Range $ _____ to $ _____ Predominant Value $ _____
Single Family Age _____ yrs. to _____ yrs. Predominant Age _____ yrs.

| | Good | Avg. | Fair | Poor |
|---|---|---|---|---|
| Employment Stability | ☐ | ☐ | ☐ | ☐ |
| Convenience to Employment | ☐ | ☐ | ☐ | ☐ |
| Convenience to Shopping | ☐ | ☐ | ☐ | ☐ |
| Convenience to Schools | ☐ | ☐ | ☐ | ☐ |
| Quality of Schools | ☐ | ☐ | ☐ | ☐ |
| Recreational Facilities | ☐ | ☐ | ☐ | ☐ |
| Adequacy of Utilities | ☐ | ☐ | ☐ | ☐ |
| Property Compatibility | ☐ | ☐ | ☐ | ☐ |
| Protection from Detrimental Conditions | ☐ | ☐ | ☐ | ☐ |
| Police and Fire Protection | ☐ | ☐ | ☐ | ☐ |
| General Appearance of Properties | ☐ | ☐ | ☐ | ☐ |
| Appeal to Market | ☐ | ☐ | ☐ | ☐ |

# S I T E    D A T A

LOT SIZE *Lot # 72* x _____ X _____ X _____ X _____    Corner    (Inside)

ZONING _____ HIGHEST AND BEST USE OF SITE: Present _____ or _____

| IMPROVMTS | Asphalt St. | Conc. St. | Curbs | Sidewalks | Alley | Driveway | |
|---|---|---|---|---|---|---|---|
| UTILITIES | Gas | Elect. | Water | San. Sewer | Storm Sewer | Well | Septic |

EASEMENTS (DETRIMENTAL TO VALUE):   Party Wall   Driveway   Sidewalk   Other

Describe Easement: _____

REMARKS: _____

**EXHIBIT**

H

☐ This Property is in HUD Flood Zone     ☐ This Property is not in HUD Flood Zone

# BUILDING DATA

TYPE

## EXTERIOR
Good Avg. Poor

| FOUNDATION | Conc. | (Block) | Brick |
| ALL CONST. | Bsmt. | (Crawl) | Slab |
| ALL CONST. | (Frame) | (Veneer) | Block |
| WINDOWS | Metal | Wood | (Vinyl) | S & S |
| ROOFING | (Asphalt) | Blt. Up | Wood |
| SIDING | Wood | Alum. | Stucco ✓ | ✓ |
| (GAR) - CAR PT. | (Frame) | Veneer | Block |
| CARS 2 | Det.'d | (Att'd) | Blt.-in | (O'H Door) |
| OTHER | Gutters | Porch | (Patio) |
| REMARKS: | | | |

## INTERIOR
Good Avg. Poor

| WALLS & CEIL. | (Drywall) | Plaster | Wood |
| FLOOR | Conc. | Tile | Wood | Carpet |
| CENT. HTG. | Air | Water | Steam | SPACE |
| FUEL | Gas | Oil | Elect. | Coal |
| FUR./BOIL. | Age | HWH | Gals. | A/C |
| ELECT. | Amps | Fuse | Cir. Br. | O/S |
| BATH(s) # | Age | FLR/Walls | Ceramic | Other |
| BATH FIX(s). | Lavs. | W.C.s | Tub(s) | Shwr(s). |
| KITCHEN | Age | Cb. & St. | Adq. | Inasq. * |
| | | O/R | Dishw. | Disp. | Ex. Fan |
| OTHER | Firepl. | | | Fir. Plan ⇨ |

| ROOMS FLOOR | LIVING | DINING | KITCHEN | BEDRMS | CLOSETS | BATHS FIX. | | APTS. | DEPRECIATION | IF NOT TYPICAL, DESCRIBE |
|---|---|---|---|---|---|---|---|---|---|---|
| BASEMENT | | | | | | | | | PHYSICAL DETERIORATION | |
| 1st FLOOR | ✓ | — | — | 1 | 3 | 1½ | | | | |
| 2nd FLOOR | | | | 2 | 3 | 2 | | | FUNCTIONAL OBSOLESCENCE | |
| 3rd FLOOR | | | | | | | | | | |
| ATTIC | | | | | | | | | ECONOMIC OBSOLESCENCE | |
| TOTAL | | | | | | | | No. Units | | |

**DEFINITION OF MARKET VALUE:** "Market value contemplates the consummation of a sale and the passing of full title from seller to buyer by deed, under conditions whereby:

1. buyer and seller are free of undue stimulus and are motivated by no more than the reactions of typical owners;
2. both parties are well-informed or well-advised and act prudently, each for what he considers his own best interest;
3. a reasonable time is allowed to test the market; and
4. payment is made in cash or in accordance with financing terms available in the community for the property type in its locale."
   * Society of Real Estate Appraisers

## COST APPROACH TO VALUE:

LAND VALUATION - (ZONED: _____): _____  F.F. X _____  $/F.F. = $ _____
or or
+ SITE IMPROVEMENTS: "AS IS" driveway, landscaping, etc. .................... + _____
other: _____
TOTAL ...... $ _____

### BUILDING VALUATION - REPLACEMENT COST

| BLDG. | AREA | UNIT COST | COST NEW | ACT. | AGE EFF. | PHY. | DEPRECIATION FUNC. | ECON. | TOTAL | DEP. VALUE |
|---|---|---|---|---|---|---|---|---|---|---|
| MAIN | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | + |

INDICATED VALUE from COST APPROACH  $ _____

## EVALUATION VALUE

Date ___11-22-05___

Land lot #72 ................................ $ 33,000.00
1½ SF 2350 ........ 8190 8188.00 ............ $ 152,280.00
Buildings ........................
Par 50 Total 440 ... 8190 8800 ........... $ 7128.00
210' x 82 ............................ 1680.00
194,088.00

## INSURANCE

Fire $ _____
Wind $ _____
Other $ _____

Signatures of Evaluators ___(signature)___

The Ideal Print Shop, Inc. (800) 248-0400



# IN THE CIRCUIT COURT OF KNOX COUNTY, TENNESSEE

FILED 2007 AUG 23 AM 11:14
CATHERINE F. QUIST
CIRCUIT COURT CLERK

KENNETH A. BOWMAN and )
COMMERCIAL BANK )
        )
    **Plaintiffs** )
        )
vs. )                          Case No. 338407
        )
ZURICH ASSURANCE COMPANY )
OF AMERICA )
        )
    Defendant. )

## SUMMONS

**To the above-named Defendant, Zurich Assurance Company of America, c/o Tennessee Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, Tennessee 37243-0565**

You are hereby summoned and required to serve upon Gregory C. Logue, plaintiff's attorney, whose address is 900 Gay Street, S.W., Suite 900, P.O. Box 900, Knoxville, Tennessee 37901-0900, an answer to the Complaint herewith served upon you within thirty (30) days after service of this Summons and Complaint upon you, judgment by default can be taken against you for relief demanded in the Complaint.

Issued and attested this _____ day of _____, 2007.

_____
Clerk

_____
Deputy Clerk

549720.1

To the Defendant:

     Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be in effect as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

**To the process server: Zurich Assurance Company of America, c/o Tennessee Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, Tennessee 37243-0565**

### RETURN

Received this summons on the _____ day of _____, 2007.

I hereby certify and return that on the _____ day of _____, 2007. I:

( ) served this summons and a complaint on defendant, in the following manner:

_____

_____

_____

( ) failed to serve this summons within 30 days after its issuance because: _____

_____

_____

_____

_____
Process Server

549720.1